UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KARA ROSS,<br><br>    Plaintiff,<br><br>    v.<br><br>FINANCIAL ASSET MANAGEMENT SYSTEMS, INC.,<br><br>    Defendant. | No. 21 C 00647<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Kara Ross filed suit alleging that Financial Asset Management Systems, Inc. ("FAMS") violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, by calling her about her husband Paúl Camarena's debt. Before the Court are the parties' cross-motions for summary judgment. For the reasons set forth below, FAMS' motion for summary judgment is granted and Ross's motion for summary judgment is denied.

**Background**

The following facts are undisputed except where otherwise indicated. Sometime in the past, Ross's husband, Paúl Camarena, incurred a student loan debt to Navient. PR ¶ 1.[1] On October 15, 2020, FAMS mailed Camarena an "initial

---

[1] The Court cites Defendant's Statement of Material Facts (R. 41) as "DSMF ¶ _"; Plaintiff's Statement of Additional Facts (R. 48) as "PSAF ¶ _"; Plaintiff's Response to Defendant's Statement of Material Facts (R. 50) as "PR ¶ _"; Defendant's Response to Plaintiff's Statement of Additional Facts (R. 56) as "DRAF ¶ _"; and Defendant's Response to Plaintiff's Statement of Material Facts (R. 47) as DR ¶ _".

1

validation notice." The notice stated, "This communication is from a debt collector. This is an attempt to collect a debt." DSMF Ex. 2. It further informed Camarena of his right to dispute the debt in writing within 30 days after receipt of the notice. DSMF Ex. 2. The notice provided FAMS' website and the mailing address for its corporate office in Georgia. DSMF Ex. 2. It did not include the email addresses for any FAMS employees. PR ¶ 6.

The same day, a FAMS employee called a phone number belonging to Ross ending in 4996 and asked to speak to Paul Camarena.[2] DRAF ¶ 6. Ross informed the caller that the number was her personal cell phone and that it was "not an appropriate number for" Camarena. DRAF ¶ 6. Ross agreed to take a message for Camarena and later relayed that message to him. PR ¶ 11. FAMS called Ross at the 4996 number again on the 16th, 20th, 22nd, 23rd, and 24th of October. DR ¶ 16.

It is undisputed that FAMS never received a written dispute of the debt it was seeking to collect through postal mail or its website. PR ¶ 7. However, on October 27, 2020, an email was sent from the address "PaulCamarena@hotmail.com" to "j.hogan@fams.net."[3] PSAF Ex. 3. The recipient email address belongs to FAMS' CEO, Jerry Hogan. DSMF Ex. E. In that email, the author wrote, "Today, one of your reps told me that you all had been calling me about a student loan debt to Navient. I have to dispute this, as I don't recall every [sic] signing a student loan contract with

---

[2] *See infra* discussion of evidentiary issue regarding ownership of the 4996 phone number.

[3] *See infra* discussion of evidentiary issue regarding authenticity of the October 27, 2020 email.

a 'Navient.'" PSAF Ex. 3. The email requested that FAMS provide documentation to verify the loan contract. PSAF Ex. 3. The email was signed "Paul Camarena" and listed a 1971 birth date. PSAF Ex. 3. On October 28, a similar email was sent to FAMS' Vice President Kevin Inches at his corporate email address. DR ¶ 10.

Ross received another call from FAMS on October 28, again asking to speak to Camarena. DR ¶ 17. During that call, Ross told the FAMS employee that Camarena was not available at her number. DR ¶ 17. FAMS called Ross's number again on October 29th and 30th, twice on November 2nd, and once more on November 3rd. DR ¶ 18.

Although FAMS placed at least twelve calls to Ross's number, she only spoke with an employee twice. PR ¶ 10. FAMS never claimed Ross was legally responsible for the subject debt, nor did it seek payment from her. PR ¶¶ 3, 4. Ross testified that she answered four calls from FAMS, but that on two occasions the caller hung up on her. PR ¶ 12. However, according to FAMS' call records, it was Ross who disconnected those calls. PR ¶ 12. Ross also testified that she may have disconnected calls when attempting to silence them. DSMF Ex. A. At no point did Ross tell FAMS to stop calling her. PR ¶ 13.

FAMS maintains several policies and practices related to management of collection accounts and correspondence with consumers. First, FAMS policy dictates that when a third party says that FAMS has dialed a wrong number or that the consumer cannot be reached at a number, FAMS will not use that number for future communication attempts. PR ¶ 15. FAMS employees are trained in procedures to code

such numbers in a way that will prevent them from being called in the future through FAMS' collection software. PR ¶¶ 18, 19. FAMS also records and audits calls daily to evaluate compliance with applicable procedures. DSAF ¶ 12. However, after the October 15, 2020 call to Ross's number, the FAMS collector failed to code it as incorrect. PR ¶ 23.

FAMS policy also requires it to cease collection activity on an account when a written or oral dispute is received. PR ¶ 26. In a similar manner to the "wrong number" coding, employees are trained to code an account as "disputed," which will prevent employees from placing calls on an account through FAMS' collection software. PR ¶¶ 27, 28.

FAMS does not intend for consumers to contact its corporate officers to dispute a debt or request validation. PR ¶ 32. Nonetheless, FAMS' corporate officers have been trained that if they receive an email from a consumer, they must forward the email to FAMS' Client Services department for processing. PR ¶ 33. However, neither of the emails from "PaulCamarena@hotmail.com" to Hogan or Inches were forwarded to FAMS Client Services. DR ¶¶ 12, 13. Hogan has no recollection of receiving the email at issue and could not locate a copy of it in his email records. PR ¶ 41. Inches likewise has no recollection of receiving the email. PR ¶ 36. During discovery in this case, a copy of this email was found in his "deleted" email folder. PR ¶ 37.

Ross submitted affidavits stating that the five calls she received from FAMS between October 29 and November 3 were "pestiferous" because they interrupted her. DRAF ¶¶ 14, 15. Ross testified that the calls from FAMS prompted her to have a

4

"discussion" with her husband about his debt, and that these discussions caused her to cry and lose sleep. DRAF ¶¶ 17, 18. Ross also submitted an affidavit stating that FAMS' calls caused her to have sleeping problems. DRAFT ¶ 20. Notwithstanding these assertions, Ross has not sought medical attention for any emotional distress resulting from FAMS' calls to her, and she has no documentation evidencing any damages she incurred due to those calls. PR ¶¶ 43, 44.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 2021 WL 4486445, at *1 (7th Cir. Oct. 1, 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the parties have filed cross-motions for summary judgment, the Court applies this standard to each motion separately to determine whether there is a genuine dispute of material fact and whether judgment should be entered as a matter of law. *Marcatante v. City of Chicago*, 657 F.3d 433, 438-39 (7th Cir. 2011). In ruling on each cross-motion for summary judgment, the Court draws inferences in favor of the party against whom the motion under consideration is made. *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011).

## Analysis

### I. Evidentiary Issues

Before turning to the merits of each motion, the Court must resolve several issues regarding the evidence it is permitted to consider.

#### a. Ownership of 4996 phone number

FAMS argues that Ross has not cited to any evidence establishing that the 4996 phone number belongs to her. The Court may disregard any asserted fact that is not supported with a citation to specific evidentiary material. L.R. 56.1(d)(2).

While Ross could have been more thorough in establishing this critical fact in her L.R. 56.1 statements, she did respond to the objection in her summary judgment reply brief. R. 57, at 8; *see* L.R. 56.1(f). Ross testified at her deposition that the 4996 number is one of two phone numbers that she uses. DSMF Ex. A, at 16:1-17:7. FAMS also attached Ross's interrogatory answers in which she identified the 4996 phone number as belonging to her. DSMF Ex. B. These parts of the record may be considered at summary judgment, Fed. R. Civ. P. 56(c)(3), and Ross would presumably testify likewise at trial.

6

FAMS has not cited to any evidence to dispute Ross's ownership of the 4996 number, challenging only whether Ross has properly supported that fact. The admissible evidence in the record is sufficient for a reasonable jury to find that the number belongs to Ross.

    b. <u>Authenticity of Camarena email</u>

The parties have stipulated that Camarena, who is serving as Ross's attorney in this matter, will not act as a witness in this case and that Ross will not rely on evidence from him. R 15 ¶ 3. FAMS argues that only Camarena can authenticate the emails disputing the debt in question as having been sent by him, and that Ross is therefore incapable of presenting evidence of those emails at trial.

FAMS cites no authority for this limitation on the permissible means of authenticating an email, and courts have not enforced such a restriction. The proponent of an item of evidence need only "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "Circumstantial evidence is of course sufficient to establish the authenticity of a document." *United States v. Clark*, 649 F.2d 534, 542 (7th Cir. 1981). In the absence of direct evidence, an email's author or sender may be demonstrated by, among other things, the characteristics of the document itself. *See United States v. Fluker*, 698 F.3d 988, 999-1000 (7th Cir. 2012) (finding the authorship of emails was sufficiently established by sender's email address, signature, and content of the message).

The emails in question bear several indicia they were written and sent by Camarena. The sender's email address includes his name, and the messages are

7

signed with his name. FAMS' own records identified the obligor of the subject debt as "Paul Camarena" and list a birth date and email address matching the emails. DRAF ¶ 1. This is sufficient circumstantial evidence to authenticate the emails even without Camarena's own testimony.

    c. <u>Consideration of FAMS' employee declarations</u>

Many of the assertions in FAMS' L.R. 56.1 statement of undisputed facts cite to the declarations of various FAMS employees and officers for evidentiary support. These declarations cover FAMS' policies and procedures as they relate to calling consumers, responding to consumer disputes, and recordkeeping, as well as specific facts related to the handling of Camarena's collection account.

Ross objects to the Court's consideration of these declarations because they were not produced during discovery. Ross cites to no law that would require them to be produced in discovery or bar considering the evidence in these declarations at summary judgment. Indeed, Rule 56 specifically contemplates the use of declarations to support a motion for summary judgment. Fed. R. Civ. P. 56(c)(4); *see also Garber v. Amazon.com, Inc.*, 380 F. Supp. 3d 766, 770 (N.D. Ill. 2019) ("Competent evidence includes facts set forth by affidavit or declaration.").

Each declaration is based on the personal knowledge of the declarant via their employment with FAMS or involvement with Camarena's account. Ross has not argued that the evidence in these declarations would be inadmissible were the declarants to testify at trial. "To be considered on summary judgment, evidence must be admissible at trial, though 'the form produced at summary judgment need not be

8

admissible.'" *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016) (quoting *Wragg v. Village of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010)). Accordingly, the Court finds that consideration of these declarations is proper. To the extent Ross has objected to any facts solely on the basis that they rely on a challenged declaration for support, those facts are considered admitted. L.R. 56.1(e)(2).

## II. Count 1: § 1692g(b)

Ross's first claim alleges that FAMS illegally continued to seek collection of the debt after Camarena emailed a written dispute. The relevant FDCPA provision states, in relevant part:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment . . . and a copy of such verification or judgment . . . is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). FAMS moves for summary judgment on this claim because (1) Ross is not within the "zone of interest" of this section because she is not a consumer, and (2) Ross cannot produce sufficient evidence to prove that Camarena, the "consumer" as it relates to the subject debt, sent the written notice required to trigger this section. The Court can dispose of the second argument because, as explained above, the record evidence is sufficient to establish that Camarena sent a written dispute to FAMS, albeit through an unintended pipeline.

FAMS' other argument relies on the general principle that "only a person within a statutory provision's 'zone of interest' has standing to sue under it. *Todd v. Collecto, Inc.*, 731 F.3d 734, 736 (7th Cir. 2013) (quoting *Harzewski v. Guidant Corp.*,

9

489 F.3d 799, 803 (7th Cir. 2007)). According to FAMS, only "consumers" may bring suit under § 1692g(b), and Ross has admitted that she is not a "consumer" under the FDCPA. *See* 15 U.S.C. § 1692a(3) (defining "consumer" as "any natural person obligated or allegedly obligated to pay any debt").

Ross contends that § 1692g(b)'s zone of interest is not so restricted. She notes that § 1692g(b) requires collectors, upon receipt of a written dispute from the consumer, to "cease collection of the debt," not "cease collection of the debt *from the consumer*." The plain language of the statute seems to command a full stop to collection efforts, not just efforts directed at the consumer. Read in concert with the FDCPA's civil liability provisions, which impose liability on "any debt collector who fails to comply with **any provision** of this subchapter with respect to **any person**," *Id.* § 1692k(a), Ross claims she is entitled to recover for any post-dispute collection activities that injured her.

Ross's response is not without merit. "[C]ourts have held that non-debtors may recover under the FDCPA, where prohibited conduct was either experienced by or directed toward the non-debtor." *Swearingen v. Portfolio Recovery Assocs., LLC*, 892 F. Supp. 2d 987, 994 (N.D. Ill. 2012). If § 1692g(b) does not permit actions by non-debtors, it would seem to "allow debt collectors to escape liability, no matter how egregious their conduct, whenever they were unsuccessful in reaching the debtor himself." *Id.*

Nonetheless, courts appear to have uniformly rejected Ross's view. Ross has not cited, and the Court's own research has not revealed, a single case in which a non-

consumer was allowed to recover for violation of § 1692g(b). Instead, courts have treated the section like others that include the word "consumer" in the text and held that only consumers may bring an action under it. *See, e.g.*, *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1001 (8th Cir. 2011)[4]; *Zaborac v. Phillips & Cohen Assocs., Ltd.*, 330 F. Supp. 2d 962, 966 (N.D. Ill. 2004) ("[T]he explicit, and in this sense restricted, language of Section 1692g(b) is strong evidence that it precludes only debt collection efforts targeting a consumer."); *King v. IB Prop. Holdings Acquisition*, 635 F. Supp. 2d 651, 658 (E.D. Mich. 2009) ("In this case, plaintiff sues under 15 U.S.C. § 1692g, which, among other things, obligates a debt collector to cease collection activity on notice from "the consumer" that the debt is disputed. Thus, like § 1692c, violations [of] § 1692g may only be brought by 'the consumer.'"). Ross's efforts to distinguish this myriad of cases are unavailing.

To be clear, the prevailing view is also supported by the language of the statute, which includes multiple references to the "consumer." Restricting a cause of action under § 1692g(b) to consumers also makes sense as a practical matter: In a typical case, an unrelated third party who received a debt collection communication but was not alleged to be the debtor would have no ability to trigger § 1692g(b)'s protection, because she would not be able to send the written dispute as the "consumer." Such a

---

[4] Although the plaintiff is *Dunham* was not the actual debtor, the court concluded that he was still a "consumer" for purposes of § 1692g(b) because the debt collector's notice alleged he owed the debt, which was in fact owed by another person with the same name. As noted, FAMS has never alleged that Ross owed the debt in question.

11

third party may instead find relief in other FDCPA provisions that apply to non-consumers.

Given the uniformity of past decisions, the Court finds that Ross lacks statutory standing to sue under § 1692g(b). FAMS is therefore entitled to summary judgment on that claim. Ross's motion for summary judgment on this claim necessarily fails and is denied.

### III. Counts 2 and 3: § 1692d

Ross's remaining claims arise under §§ 1692d and 1962d(5). Section 1962d prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Section 1962d(5) prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Because both claims relate to FAMS' repeated phone calls to Ross, the Court will consider them together. *See Schumacher v. Credit Protection Ass'n*, 2015 WL 5786139, at *9 (S.D. Ind. Sept. 30, 2015). FAMS argues it is entitled to summary judgment on these claims for three reasons: (1) Ross's evidence is insufficient to establish violations as a matter of law; (2) FAMS is entitled to the bona fide error defense; and (3) Ross has failed to establish actual damages.

FAMS first claims it lacked the requisite intent to harass. Subsection 5 requires proof of an "intent to annoy, abuse, or harass any person at the called number." However, FAMS' intent is irrelevant as to the § 1692d claim, which turns

on whether the "natural consequence" of FAMS' actions was to "harass, oppress, or abuse" any person. *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2003).

"Under § 1692d, there are no bright-line rules as to what constitutes harassment or what demonstrates intent to annoy." *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 228 (D. Mass. 2014). "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985). However, "Congress has indicated its desire for the courts to structure the confines of § 1692d." *Id.* Accordingly, many courts have granted summary judgment on a finding that the circumstances of debt collection calls did not amount to harassment. *See Schumacher*, 2015 WL 5786139, at *10 (collecting cases).

Even when drawing reasonable inferences in Ross's favor, the Court finds the evidence insufficient to support her claims under either provision. FAMS made only a dozen calls over a period of about 3 weeks. Only once did Ross receive two calls in a single day, and both went unanswered. Furthermore, the two times a FAMS employee spoke to Ross, they simply asked to speak to Camarena. Those calls were short and there is no evidence that the collector used obscene or abusive language or attempted to disparage Ross or Camarena. Moreover, the calls were not to an employer, where collection calls may have a greater prejudicial impact. And while Ross twice told FAMS that Camarena was unavailable at her number, she agreed to

13

pass on a message to him, and never told FAMS to stop calling her.[5] Finding that this course of conduct had the "natural consequence" of harassing Ross, let alone the *intent* to do so, would effectively outlaw routine operations of debt collectors. This is not what Congress intended when it enacted the FDCPA. *See McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089, 1096 (9th Cir. 2020) ("As we recently observed, Congress did not intend to ban debt collection; it intended to eliminate abusive, deceptive, and unfair collection practices.").

Furthermore, even if the continued calls after Ross informed FAMS they had the wrong number ran afoul of § 1692d, FAMS would be entitled to the bona fide error defense. That defense shields a debt collector from liability if it "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

FAMS maintains procedures for coding accounts with notations of wrong numbers or active disputes, such that it cannot continue to call those numbers through its collection software. The declaration from FAMS's VP of Sales and Marketing states that the collector on Camarena's account should have coded Ross's number accordingly but failed to do so for an unknown reason. Had Ross's number been coded according to FAMS policy after the October 15 call, no more calls would

---

[5] To the extent Ross's claims under § 1692d are premised on FAMS calling her after Camarena sent a written dispute, they are simply a roundabout method of invoking § 1692g(b). Because relief is not available to Ross under that section, *see supra*, the Court considers these claims without regard to that issue.

14

have been made. Ross has not disputed any of this evidence or produced any evidence herself to contradict it.

Instead, Ross argues that FAMS has not shown it "maintain[ed] . . . procedures reasonably adapted to avoid any such error" because, for example, it failed to specify how frequently those procedures were audited.[6] *Id.* Ross's protestation demands too much. For one, FAMS did produce evidence that its calls are recorded and audited to ensure compliance with applicable procedures. Furthermore, "[Section] 1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 539 (7th Cir. 2005). Courts have found the bona fide error defense satisfied where a debt collector trains its employees on a mechanical process for coding accounts. *See, e.g., Washington v. Convergent Outsourcing, Inc.*, 2017 WL 1093152, at *4 (N.D. Ill. Mar. 23, 2017); *Gebhardt v. LJ Ross Assocs., Inc.*, 2017 WL 2562106, at *5 (D.N.J. June 12, 2017). Ross cites to a single case that rejected the defense, *Morris v. Choice Recovery, Inc.*, 2020 WL 6381926 (N.D. Ill. Oct. 30, 2020), but that case involved a different type of error and seized on the defendant's apparent lack of established policy. In contrast, the uncontroverted evidence here establishes that FAMS maintained appropriate procedures to prevent repeated calls to wrong numbers. The mere fact that a mistake occurred does not defeat application of the

---

[6] Ross also makes a cursory, unsupported argument that the bona fide error defense is unavailable to FAMS because it denies having violated the FDCPA in the first place. This undeveloped argument may be disregarded and appears meritless to boot. *See Obi v. Chase Home Fin., LLC*, 2010 WL 4810609, at *2 (N.D. Ill. Nov. 19, 2010).

defense. *See Washington*, 2017 WL 1093152, at *4 (finding that bona fide error defense applied where collector inadvertently mis-coded account and noting that "procedures do not need to achieve perfection in order to be reasonable for purposes of § 1692k(c)").

For these reasons, the Court finds that no genuine issue of material fact exists as to Ross's § 1692d claims, and FAMS is entitled to summary judgment.[7] Ross's motion for summary judgment on these claims necessarily fails and is denied.

## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment, R. 39, is granted and Ross' motion for summary judgment, R. 42, is denied. Civil case terminated.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: February 14, 2022

---

[7] Given these findings, the Court need not consider FAMS' third argument that Ross has failed to produce sufficient evidence of actual damages.